**[Cite as *In re Estate of Cornell*, 2021-Ohio-877.]**

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WILLIAMS COUNTY

In re Estate of Alfred R. Cornell

Court of Appeals No. WM-20-005

Trial Court No. 20171218

**DECISION AND JUDGMENT**

Decided: March 19, 2021

* * * * *

Brian W. Kaiser, for appellant.

* * * * *

**MAYLE, J.**

{¶ 1} Plaintiff-appellant, Galen Cornell, appeals the June 9, 2020 judgment of the Williams County Court of Common Pleas, Probate Division. Thompson Smith, the executor of the Estate of Alfred R. Cornell, is identified as the defendant-appellee, however, he has been discharged from his duties as executor by virtue of the final settling of the estate and has not filed a brief. For the following reasons, we reverse the probate court judgment.

## I.  Background

{¶ 2} Alfred R. Cornell died on August 6, 2017.  He was survived by his spouse, Maxine Cornell, and two adult children, Galen Cornell and Marcia Cornell.  Maxine died on December 26, 2018.  Maxine was not the natural or adoptive mother of Galen or Marcia.

{¶ 3} On September 14, 2017, Thompson Smith ("Smith"), represented by Michael Spangler, filed an application to probate Cornell's will dated February 6, 2001 ("the 2001 will").  The 2001 will designated Galen and John Martin Smith co-executors of the will, but provided that if John Martin Smith could not act, Thompson Smith would serve as co-executor in his place.  Along with his application to probate Cornell's will, Smith applied for authority to administer the estate and moved for an order finding Galen unsuitable to serve as co-executor.  The motion alleged that Galen had misappropriated funds from Cornell while acting as attorney-in-fact and trustee of the Alfred Cornell Revocable Trust ("Cornell's trust").

{¶ 4} On September 20, 2017, Galen filed an application to probate a more recent will—one dated December 12, 2015 ("the 2015 will")—and for authority to administer the estate.  On November 28, 2017, the trial court issued a judgment admitting the 2015 will to probate and appointing Galen executor.  Attorney Brian Kaiser represented Galen.

{¶ 5} On December 11, 2017, Spangler entered an appearance on behalf of David Newcomer and Jason Payne, successor co-trustees of Cornell's trust.  They moved the court for an order requiring Galen to preserve all assets of the estate, including shares of

2.

Edon Bancorp stock, and prohibiting Galen from removing, transferring, or disposing of any estate asset, including the Edon Bancorp stock. The parties entered a consent judgment to this effect on December 18, 2017.

{¶ 6} On April 23, 2018, the parties entered a stipulated order of inventory, identifying and inventorying items of personal property that belonged to Cornell. A consent judgment entry was filed the same day, under which the parties agreed that (1) a dividend check from Edon State Bank payable to Cornell in the amount of $6,656,68 would be negotiated and held in trust by Spangler's law firm; (2) Galen would sign certain tax forms and returns on behalf of Cornell; and (3) disbursements would be made from Spangler's law firm's trust account to the IRS for $2,742 for a 2017 tax liability, and to the law firm for $355 for tax preparation fees.

{¶ 7} On August 13, 2018, a judgment was entered permitting Galen to remove certain personal property from real estate owned by the trust—these items are the same items identified in the April 23, 2018 stipulated order of inventory.

{¶ 8} Galen filed a schedule of assets on October 2, 2018, that included Edon Bancorp stock valued at $179,760, a dividend check from Eden Bancorp of $6,656.68, and a social security death benefit of $255. The property identified in this schedule formed the basis for an inventory and appraisal filed with the court that same day, listing the estate's tangible personal property at $186,671.68. The probate court approved the inventory without an appraisal on November 9, 2018.

{¶ 9} On February 25, 2019, following a will contest initiated by Cornell's trust, the parties entered a consent entry of dismissal (1) declaring that the 2015 will is invalid on the grounds of incompetence or undue influence; (2) terminating the administration of the 2015 will and the court's previous appointment of Galen as administrator; (3) discharging Galen as the personal representative of Cornell's estate; (4) taxing the costs of the action to contest the validity of the 2015 will to the estate and clarifying that the estate would be administered under the terms of the 2001 will; (5) holding each party to the will contest responsible for payment of his own attorney fees; (6) agreeing to set for hearing Smith's application for authority to administer the estate; and (7) waiving Galen's right to be appointed personal representative of the 2001 will.

{¶ 10} Smith was appointed executor of the estate on March 21, 2019. He filed a schedule of assets and inventory and appraisal on August 7, 2019. Included in the schedule of assets was intangible personal property totaling $199,402.13 and non-probate real estate with a total appraised value of $1,320,000. The court approved the inventory without appraisal on September 11, 2019. On October 22, 2019, Spangler applied for counsel fees of $19,663.04, and Smith applied for executor fees of $20,182.06. The court approved those requests. Smith also filed a statement in lieu of and for an account, which the trial court accepted that same day. It entered a judgment entry statement in lieu of and for a final account, dispensing with the filing of a final account and discharging Smith as executor of the estate.

4.

{¶ 11} On February 19, 2020, Kaiser filed a "motion to reopen the estate and consider administrative claim," requesting payment of his attorney fees and costs incurred in administering the estate, totaling $6,305.80. Kaiser had requested payment of those fees via correspondence to Smith dated May 15, 2019; a handwritten note on that letter indicates that he mailed the letter requesting payment of his fees on June 11, 2019. Spangler denied Kaiser's request for fees in correspondence dated October 29, 2019. That letter set forth several reasons for denying Kaiser's request for fees: (1) he failed to present the claim to the estate within six months of Cornell's death as required by statute, (2) the initial estate proceedings were "without merit," (3) Galen had his owns funds from which to pay his attorney, and (4) Cornell's trust had incurred significant legal expenses to prosecute the will contest proceedings.

{¶ 12} Galen also filed a motion on February 19, 2020, requesting "review and correction of final orders of distribution." He alleged that he was the primary beneficiary of Cornell's trust, and no notices of the statement in lieu of account or closing of the estate had been provided to trust beneficiaries. He also claimed that the majority of fees that had been paid to Spangler and Smith were derived from the handling of real estate that was not properly a part of the probate estate—those assets were titled to the trust, he claimed. Galen maintained, therefore, that the applications for fees were excessive and awarded in error.

{¶ 13} The trial court held a hearing on May 26, 2020; due to the COVID-19 pandemic, the hearing was held virtually via zoom. Following the hearing, the trial court

5.

denied the motions. Galen moved for findings of fact and conclusions of law with respect to the court's decision denying "the Petition to Reopen Case." The court issued findings and conclusions in a decision and judgment journalized on June 9, 2020. Those findings and conclusions set forth its rationale for denying *Kaiser's* motion: that the claim for fees was not made within six months of Cornell's death, as required by R.C. 2117.06(B), or within two months of having been rejected by the fiduciary of the estate, as required by R.C. 2117.12. The findings of fact and conclusions of law did not explain the court's rationale for denying *Galen's* motion, however, it specifically denied the motion.

{¶ 14} Galen appealed the trial court judgment. He assigns the following errors for our review:

I. THE LOWER COURT ERRORED [sic] IN NOT ADMITTING PLAINTIFF/APPELLANT [sic] EXHIBITS FOR CONSIDERATION[.]

II. THE LOWER COURT ERRORED [sic] IN NOT REOPENING THE CASE TO REVIEW THE FEE AWARD[.]

III. THE LOWER COURT ERRORED [sic] IN REFUSING TO REOPEN THE CASE IN ORDER TO CONSIDER THE CLAIM FOR ATTORNEY'S FEES[.]

IV. THE LOWER COURT ERRORED [sic] IN NOT ISSUING FINDINGS OF FACT AND CONCLUSIONS OF LAW[.]

## II. Law and Analysis

{¶ 15} Galen's first assignment of error challenges the manner in which the zoom hearing was conducted, which, he argues, led the trial court to disregard his exhibits. His second assignment of error challenges the court's denial of his motion for review and correction of final orders of distribution. His third assignment of error challenges the trial court's denial of Kaiser's motion to reopen the estate and consider his attorney-fee claim. And his fourth assignment of error challenges the scope of the court's findings of fact and conclusions of law. We address his assignments out of order.

### A. The Denial of Kaiser's Motion

{¶ 16} In his third assignment of error, Galen argues that the trial court erred in denying Kaiser's motion to reopen the appeal and consider his administrative claim for attorney fees. He argues that Kaiser handled the administration of the estate up through the filing of a complete inventory, he maintained separate records of the work performed on behalf of the estate versus the work he performed in connection with the will contest, and he had been assured that his fees would be paid by the estate. Despite being aware of the existence of his claim for fees, Spangler and Smith failed to address the claim, then closed the estate without properly notifying the beneficiaries. While Galen concedes that he failed to bring an action within two months of Kaiser's claim being rejected, he insists that he could not have submitted his claim within six months of Cornell's death. He also points out that Kaiser submitted his claim while the estate remained open, yet his claim was not rejected until after the estate was closed; Galen contends that at the point the

claim was rejected, neither Spangler nor Smith had any power to reject the claim, thus the two-month deadline is inapplicable.

{¶ 17} Before addressing the substance of Galen's arguments, we briefly address the fact that Galen—not Kaiser—appealed the trial court's denial of Kaiser's motion to reopen the estate. It could be argued that Galen lacks standing to challenge the court's judgment.

{¶ 18} Whether a party has standing depends upon whether he or she has a "personal stake in the outcome of the controversy." *In re Estate of York*, 133 Ohio App.3d 234, 241, 727 N.E.2d 607 (12th Dist.1999), quoting *Middletown v. Ferguson*, 25 Ohio St.3d 71, 75, 495 N.E.2d 380 (1986). In *Estate of Sardi v. Barlow*, 9th Dist. Lorain No. 4345, 1988 WL 134250, *5 (Dec. 14, 1988), the court recognized that "[t]he probate court's denial of [an intestate heir's attorneys'] application for fees was in effect, a denial of a claim against the estate and affected the right of the intestate heir who was represented by the [attorneys] as well as the attorneys themselves."

{¶ 19} While Galen is not a beneficiary of Cornell's will, he is a beneficiary of Cornell's trust, and the assets of the estate passed to the trust. The court in *Ollick v. Rice*, 16 Ohio App.3d 448, 454-55, 476 N.E.2d 1062 (8th Dist.1984) acknowledged that where the majority of an estate's assets are bequeathed to a trust, the beneficiary of that trust has "a very real interest" in the administration of the estate, such that he or she has standing to except to or move to vacate estate accounts. *See also In re Estate of Boll*, 126 Ohio

8.

App.3d 507, 510, 710 N.E.2d 1139 (4th Dist.1998) (finding that trust beneficiary had a "direct, pecuniary interest" in the estate).

{¶ 20} Under these cases, we believe that Galen has standing to challenge the court's judgment for two reasons: (1) as alluded to in Spangler's letter denying Kaiser's request for fees, Galen will become responsible for the payment of Kaiser's attorney fees given the court's denial of Kaiser's motion; and (2) Galen, as the beneficiary of Cornell's trust, has an interest in the court's judgment concerning fees that are deemed payable—or not payable—from the estate. We find, therefore, that he has standing.

{¶ 21} Turning to the merits of Galen's assignment of error, R.C. 2117.06(B) requires that "all claims shall be presented within six months after the death of the decedent." We agree with Galen, however, that Kaiser's attorney fees were incurred in the administration of the estate and could not have been submitted within six months of Cornell's death. To the contrary, under Local Rule 71.1(B) of Williams County's Probate Division, attorney's fees shall not be paid more than two weeks before the filing of the fiduciary's final account or certificate of termination. The six-month deadline provided in R.C. 2117.06(B) was not a valid basis for rejecting Kaiser's claim for fees.

{¶ 22} As for the two-month deadline cited by the court, R.C. 2117.12 provides that when a claim against an estate has been rejected, "the claimant must commence an action on the claim * * * within two months after the rejection * * *." As provided in R.C. 2117.06(A)(1)(a), Kaiser mailed to Smith a written request for payment of his fees on June 11, 2019, while the probate action remained pending. Under R.C. 2117.06(D),

9.

Smith was required to allow or reject the claim within 30 days, and was required to do so in writing. R.C. 2117.11. Instead of promptly allowing or rejecting the claim, Smith waited to reject the claim until a week after closing the estate. He purported to do so via a letter from Spangler dated October 29, 2019. Kaiser did not file the motion to reopen the estate and consider the claim until February 19, 2020—almost four months after the claim was rejected.

{¶ 23} Galen argues that because the estate was already closed, Smith was no longer authorized to act on behalf of the estate at the point he rejected the claim, therefore, the limitation period set forth in R.C. 2117.12 is inapplicable. Indeed, Smith resigned his duties effective October 22, 2019, and the court discharged him from the estate. The question then becomes whether the October 29, 2019 rejection was effective given that Smith was no longer authorized to act on behalf of the estate. If the rejection was effective, the failure to commence an action on the claim within two months would serve as a bar to the claim for fees.

{¶ 24} In *In re Douglass' Estate*, 77 Ohio Law Abs. 89, 90-93, 144 N.E.2d 924 (C.P.1957), a creditor moved to vacate and set aside the order of the court settling the final and distributive account of the Estate of Earl Faulk Douglass, filed approximately five months after the account was settled. In that case, the creditor timely presented its claim to the estate's administrators. The administrators did not outright reject the claim, however, they sought to negotiate a settlement of the claim. The creditor did not respond.

10.

{¶ 25} The administrators filed a schedule of claims, indicating that the claim had been rejected. They filed their final and distributive account, which was settled approximately two months later, and they were discharged from their fiduciary obligations. Upon learning of the settling of the account, the creditor moved to set aside the order of the court settling the final and distributive account, claiming that it never received any notice that its claim was rejected as required by statute. The creditor further argued that until it was notified of a rejection, it was not in a position to bring suit on the claim as provided in R.C. 2117.12. The creditor insisted that unless the settlement of the accounting was vacated and the administrators reinstated, there was no one authorized to accept or reject its claim and no one to sue if the claim was rejected.

{¶ 26} The court concluded that the administrators had not plainly and unequivocally rejected the claim. And "[t]he claim not having been rejected, the statute of limitations set forth in Section 2117.12 for bringing suit on the claim has not as yet started to run." *Id.* at 92. The court, therefore, concluded that the administrators had to be reinstated to complete their work. The court granted the creditor's motion.

{¶ 27} There are significant differences between the facts of the present case and those in *In re Douglass' Estate*, but we believe the principle is the same: (1) the estate should not have been closed before either allowing or rejecting the claim for Kaiser's attorneys fees, and (2) Smith's rejection of the claim came after his authority to act for the estate had ceased. *See also In re Estate of Jarriett v. Parkview Fed. Sav. Bank*, 8th Dist. Cuyahoga No. 93289, 2010-Ohio-1434, ¶ 15, 19 (finding that court erred

11.

by closing administration of estate before claim had been allowed or rejected, despite the fact that creditor did not seek to vacate final account until after expiration of two-month time period).

{¶ 28} "The decision whether to grant a motion to reopen an estate is within the discretion of a probate court." *In re Estate of Fields*, 6th Dist. Wood No. WD-15-019, 2016-Ohio-5358, ¶ 19. Because Smith failed to reject the claim before the estate was closed, we find that the two-month deadline for commencing an action did not begin to run. We, therefore, find that the trial court abused its discretion when it refused to reopen the estate to consider the claim for attorneys fees. Accordingly, the estate must be reopened and a fiduciary reappointed so that the merits of the claim may properly be considered, and, if rejected, action may be taken to appropriately challenge such rejection.

{¶ 29} We find Galen's third assignment of error well-taken.

## B. Review of the Fee Awards

{¶ 30} In his second assignment of error, Galen argues that the trial court erred in refusing to reopen the estate to review the fee awards. In support of this assignment, Galen maintains that (1) the court improperly held a limited non-evidentiary hearing which prevented him from being able to present evidence to meet the burden set by the court; (2) there was ample evidence in the pleadings and oral argument to require the court to reopen the case and review the calculation of fees; (3) there was evidence of excessive fees sufficient to justify reopening the case for review; (4) notice of the hearing

12.

on inventory was not properly given to next of kin in violation of Local Rule 61.2(B); and (5) the beneficiaries of the trust timely moved to reopen the estate and had no other recourse.

{¶ 31} In administering an estate, "[w]ithin three months after the date of the executor's or administrator's appointment * * *, the executor or administrator shall file with the court an inventory of the decedent's interest in real property located in this state and of the tangible and intangible personal property of the decedent that is to be administered and that has come to the executor's or administrator's possession or knowledge." R.C. 2115.02. "Upon the filing of the inventory required by section 2115.02 of the Revised Code, the probate court shall set a day, not later than one month after the day the inventory was filed, for a hearing on the inventory." R.C. 2115.16. Williams County Local Probate Rule 31.2(B) requires the executor to serve notice of the hearing on inventory upon the decedent's next of kin.

{¶ 32} Here, Smith filed an inventory on August 7, 2019. He procured waivers of the hearing on inventory from the co-trustees of Cornell's trust. He did not procure a waiver or serve notice of hearing on inventory upon Cornell's next of kin. Notably, this is the first document filed with the court in which the non-probate real estate is listed among Cornell's assets. The inclusion of this real estate greatly increased the executor and attorney fees, which were calculated as a percentage of the estate's assets.

{¶ 33} Furthermore, under R.C. 2109.31(B)(1), "[e]very administrator and executor, within six months after appointment, shall render a final and distributive

13.

account of the administrator's or executor's administration of the estate." R.C. 2109.32 provides that a fiduciary's account required under R.C. 2901.301 "shall be set for hearing before the probate court," and that hearing "shall be set *not earlier than thirty days after the filing of the account*." (Emphasis added.) A copy of the account must be provided to beneficiaries of the estate, and the administrator *may* serve notice of the hearing upon the fiduciary's account "upon any person who is interested in the estate or trust, including creditors as the court may direct." R.C. 2109.32(B)(1) and 2109.33. Where, as here, a testate estate is at issue, Local Rule 64.1(G)(2)(b) specifies that a notice of hearing on the final account be served on residuary beneficiaries.

{¶ 34} Galen, as a beneficiary of Cornell's trust, was an "interested party," *see Ollick*, 16 Ohio App.3d at 454-55, 476 N.E.2d 1062, however, there is no indication that the court required service on him. We see no error, therefore, in the failure to serve him with a copy of the statement in lieu of the final account or notice of hearing on the account.

{¶ 35} Having said this, Smith filed the statement in lieu of final account and applications for attorney and fiduciary fees, which the court accepted, signed, approved, and journalized *all on the same day*, rather than setting it for hearing at least 30 days later. While Galen may not have been among the class of persons entitled to notice of the filing of an account or notice of hearing, he may otherwise have become aware—perhaps through the co-trustees, the fiduciaries of the trust of which he was a beneficiary—that the estate was being finalized, and he would have had an opportunity at that time to raise

14.

the issues he ultimately raised in his motion to reopen. Closing the estate immediately deprived him of the opportunity to timely raise those challenges.

{¶ 36} Accordingly, we find that the trial court abused its discretion when it refused to consider the merits of Galen's objections to the fees granted to Smith and Spangler. The estate must be reopened and a fiduciary reappointed so that the merits of the claim may properly be considered.

{¶ 37} We find Galen's second assignment of error well-taken.

### C. The Limited Evidentiary Hearing and Findings of Fact and Conclusions of Law

{¶ 38} Given our disposition of Galen's second and third assignments of error, we deny as moot his first and fourth assignment of error.

### III. Conclusion

{¶ 39} We conclude that the trial court abused its discretion when it refused to consider the merits of Galen's objections to the fees granted to Smith and Spangler because (1) Smith failed to serve Galen with a copy of the inventory, in violation of Williams County Local Probate Rule 31.2(B); and (2) the trial court approved the statement in lieu of final account on the day it was submitted instead of 30 days after it was filed, as required under R.C. 2109.32. We find Galen's second assignment of error well-taken.

{¶ 40} We conclude that the trial court abused its discretion when it refused to consider Kaiser's claim for attorneys fees because (1) the six-month deadline provided in

15.

R.C. 2117.06(B) was inapplicable, and (2) Smith failed to reject the claim before the estate was closed—when he was no longer authorized to act on behalf of the estate—and R.C. 2117.12's two-month deadline for commencing an action did not begin to run. We find Galen's third assignment of error well-taken.

{¶ 41} We dismiss as moot Galen's first and fourth assignments of error.

{¶ 42} We reverse the June 9, 2020 judgment of the Williams County Court of Common Pleas, Probate Division, and remand so that the probate court may reopen the estate, reappoint a fiduciary, and consider the merits of the request for attorney fees and challenges to the payment of the executor and attorney fees paid by the estate. Cornell's estate is ordered to pay the costs of this appeal under App.R. 24.

Judgment reversed
and remanded.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.

_____
JUDGE

Christine E. Mayle, J.

Gene A. Zmuda, P.J.
CONCUR.

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.