WARDEH, Appellee,

v.

ALTABCHI, Appellant.

[Cite as *Wardeh v. Altabchi*, 158 Ohio App.3d 325, 2004-Ohio-4423.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 03AP–1177.

Decided Aug. 24, 2004.

Burnside Kelly Law Office and Susan Burnside–Kelly, for appellee.

Philip B. Kaufman, for appellant.

PEGGY BRYANT, Judge.

{¶ 1} Defendant-appellant, Asad Altabchi, appeals from judgments of the Franklin County Court of Common Pleas, Division of Domestic Relations, (1) granting plaintiff-appellee, Mouna Wardeh, a civil protection order against defendant and (2) amending the order. Because the trial court improperly amended the order, we reverse the judgment amending the civil protection order, but because the trial court properly issued the original civil protection order, we affirm the trial court's judgment issuing the civil protection order.

{¶ 2} Plaintiff and defendant, who are of Syrian nationality, were married in Syria on November 28, 1998, and came to Columbus in May 2000 to avail themselves of in vitro fertilization technology. When plaintiff became pregnant, the parties decided to stay in the United States for the duration of her pregnancy, and defendant obtained a visa permitting him to work. Shortly after their son, Abdulrahman Altabchi ("Abu"), was born on June 27, 2001, the parties'

marriage began to erode. Defendant left in January 2002 to work in Atlanta, Georgia for several months, while plaintiff remained in Columbus with the child. Defendant then went to Syria for several months to attend to his ailing father and returned to Columbus in October 2002.

{¶ 3} On December 16, 2002, plaintiff filed a complaint for divorce in the Franklin County Court of Common Pleas, Division of Domestic Relations. Plaintiff also filed a petition with the federal government for political asylum to allow plaintiff and Abu to remain in the United States. According to the parties, in March 2003 the trial court in the divorce action awarded plaintiff temporary sole custody of the child, ordered defendant to pay child support, permitted defendant to have only supervised visitation, and ordered that neither party remove the child from the United States without the court's permission.

{¶ 4} While the divorce action was pending, plaintiff filed a petition on April 24, 2003, in the Franklin County Court of Common Pleas, Division of Domestic Relations, requesting a domestic-violence civil protection order ("CPO") against defendant. The petition alleged that defendant had recently moved to within one block of plaintiff's residence and had threatened to beat plaintiff, take their son, and go back to Syria. The CPO petition was filed as a new action, not part of the divorce action, and was assigned to a judge other than the judge assigned to the divorce action. Following an ex parte hearing held the same day pursuant to R.C. 3113.31, the trial court in the new action issued a temporary CPO prohibiting defendant from "harming, attempting to harm, threatening, molesting, following, stalking, bothering, harassing, annoying, [or] contacting" plaintiff or the child. Paragraph six of the temporary CPO expressly barred defendant from being within 500 yards of plaintiff or the child.

{¶ 5} After various continuances, a full hearing on the petition was held on August 26 and October 31, 2003. At the conclusion of the hearing, the trial court filed an entry finding that as a result of past threats and altercations, plaintiff was in fear of imminent serious physical harm from defendant and had a legitimate fear that defendant might attempt to take Abu to Syria to gain permanent sole custody and control to the exclusion of plaintiff. The entry incorporated an accompanying CPO that, in addition to maintaining the provisions of the temporary CPO then in effect, ordered:

13. * * *

(B) As a limited exception to paragraph 6 [which prohibits defendant from being present within 500 yards of petitioner or the child], temporary visitation rights are established as follows: any visitation [of the child] by [defendant] will be supervised at all times.

* * *

18. \* \* \* [The child] shall not be removed from the United States by his father.

By order of the court, the CPO's terms were made effective until October 31, 2008. Upon its entry, the CPO became a final, appealable order pursuant to R.C. 3113.31(G).

{¶ 6} On November 5, 2003, the trial court sua sponte issued an entry pursuant to Civ.R. 60(A) amending the October 31, 2003 CPO. The entry (1) deleted paragraph 13 of the CPO and (2) amended paragraph 18 of the CPO to state:

[The child] shall not be removed from the United States by his father, Asad Altabchi. Further, the father shall have only supervised visitation/parenting time with [the child].

All other provisions of the October 31, 2003 CPO remained in full force and effect.

{¶ 7} Defendant timely appeals the trial court's October 31, 2003 entry and accompanying CPO, together with the November 5, 2003 entry amending the CPO, and assigns the following errors:

**ASSIGNMENT OF ERROR NO. 1**

The trial court abused its discretion and erred as a matter of law when it modified the terms and conditions of its order of October 31, 2003 granting the civil protection order.

**ASSIGNMENT OF ERROR NO. 2**

The trial court committed reversible error when it made its allocation of parental rights and responsibilities limiting appellant-father's visitation with his son.

**ASSIGNMENT OF ERROR NO. 3**

The trial court erred to the prejudice of the appellant-father by making statements which demonstrate that the trial court could not impartially consider the appellant-father's case and by conducting the judicial proceeding in a manner such that the integrity and independence of the judiciary was not preserved.

**ASSIGNMENT OF ERROR NO. 4**

The trial court abused its discretion and committed reversible error in its order of October 31, 2003 by granting appellee-mother relief that exceeds the statutory authority set forth in Ohio Revised Code § 3113.31.

**ASSIGNMENT OF ERROR NO. 5**

The trial court's extension of the civil protection order for the maximum time period available was an abuse of discretion and constituted reversible error when the evidence did not warrant such extraordinary relief.

**ASSIGNMENT OF ERROR NO. 6**

The trial court abused its discretion and committed reversible error by granting appellee-mother's petition for civil protection order.

{¶ 8} Defendant's first assignment of error asserts that the trial court lacked authority to modify the terms of the October 31, 2003 CPO. Defendant contends that the changes the court made to the final order were substantive rather than clerical in nature, and thus the court exceeded the scope of authority granted in Civ.R. 60(A).

{¶ 9} A trial court has authority to modify its judgments, orders, or decrees in accordance with the standards set forth in Civ.R. 60(A). *Thurston v. Thurston*, Franklin App. No. 02AP–555, 2002-Ohio-6746, 2002 WL 31750280, at ¶ 11. Civ.R. 60(A) allows a court, in its discretion, to correct "[c]lerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission." *State ex rel. Litty v. Leskovyansky* (1996), 77 Ohio St.3d 97, 100, 671 N.E.2d 236. Under Civ.R. 60(A), a clerical mistake "refers to a mistake or omission, mechanical in nature and apparent on the record, which does not involve a legal decision or judgment." Id.; *Bobb Forest Products, Inc. v. Morbark Industries, Inc.*, 151 Ohio App.3d 63, 2002-Ohio-5370, 783 N.E.2d 560, ¶ 26. Civ.R. 60(A) does not authorize substantive changes to judgments, orders, or decrees. Id.; *Thurston*, 2002-Ohio-6746, at ¶ 12.

{¶ 10} As the Twelfth District Court of Appeals explained in *Kuehn v. Kuehn* (1988), 55 Ohio App.3d 245, 247, 564 N.E.2d 97, "[t]he basic distinction between clerical mistakes that can be corrected under Civ.R. 60(A) and substantive mistakes that cannot be corrected is that the former consists of 'blunders in execution' whereas the latter consists of instances where the court changes its mind, either because it made a legal or factual mistake in making its original determination, or because, on second thought, it has decided to exercise its discretion in a different manner." Id., quoting *Blanton v. Anzalone* (C.A.9, 1987), 813 F.2d 1574, 1577, fn. 2. In this case, plaintiff concedes that the November 5, 2003 entry deleting paragraph 13 of the October 31, 2003 CPO constitutes a substantive, rather than clerical, change to the CPO and thus is not a permissible modification under Civ.R. 60(A).

{¶ 11} As a limited exception to paragraph six's prohibition against defendant's being within 500 yards of plaintiff or the child, paragraph 13 of the October 31, 2003 CPO provides that defendant may have supervised visitation with the child, notwithstanding paragraph six's prohibition. As a result of paragraph 13's deletion, if defendant engages in supervised visitation as permitted in amended paragraph 18, his presence or contact with the child would be at odds with, and in violation of, paragraph six's prohibition against defendant's doing so, thus subjecting defendant to possible criminal penalties. See R.C. 3113.31(L); *Felton v. Felton* (1997), 79 Ohio St.3d 34, 38–39, 679 N.E.2d 672. The deletion of

paragraph 13 thus substantively changes the October 31, 2003 CPO, which granted a necessary exception in paragraph 13 to enable defendant to exercise supervised visitation with the child without violating paragraph six of the CPO.

{¶ 12} Because substantive changes are not within the purview of Civ.R. 60(A), the trial court exceeded the scope of its authority in amending the October 31, 2003 CPO. Accordingly, the November 5, 2003 entry amending the October 31, 2003 CPO must be reversed. Defendant's first assignment of error is sustained.

{¶ 13} To the extent that defendant's remaining assignments of error challenge the trial court's November 5, 2003 entry that amends the October 31, 2003 CPO, defendant's assertions are rendered moot by our resolution of the first assignment of error and will not be addressed. However, in the absence of the trial court's November 5, 2003 entry, the October 31, 2003 entry and CPO remain as the judgment of the trial court, subject to challenge in defendant's remaining assignments of error.

{¶ 14} Defendant's second assignment of error asserts that pursuant to R.C. 3113.31(E)(1)(d), the trial court, in the CPO action, had no jurisdiction to determine any matters affecting defendant's parental rights, responsibilities, and visitation regarding the child because the trial court in the divorce action had previously determined these matters.

{¶ 15} R.C. 3113.31(E)(1)(d) provides that a domestic violence civil protection order granted by a "court" may

[t]emporarily allocate parental rights and responsibilities for the care of, or establish temporary parenting time rights with regard to, minor children, if no other court has determined, or is determining, the allocation of parental rights and responsibilities for the minor children or parenting time rights.

{¶ 16} Defendant contends that pursuant to R.C. 3113.31(E)(1)(d), the trial judge in this case was statutorily precluded from intruding on the province of the trial judge in the divorce action regarding the allocation of parental rights, responsibilities, and visitation concerning the child, because the judge assigned to this case is not the same judge assigned to the parties' divorce action, even though both are judges in the domestic relations division of the common pleas court in Franklin County. Defendant argues that the term "court" as used in R.C. 3113.31(E)(1)(d) means an "individual judge" of a county common pleas court, not a division of a county common pleas court.

{¶ 17} R.C. 3113.31(A)(2) defines "court" as "the domestic relations division of the court of common pleas in counties that have a domestic relations division, and the court of common pleas in counties that do not have a domestic relations division." The term "court" in R.C. 3113.31 does not refer to a specific judge, but rather the common pleas court's domestic relations division as a whole.

{¶ 18} Here, the Domestic Relations Division of the Franklin County Court of Common Pleas has jurisdiction over the parties' divorce action and plaintiff's civil protection action. Thus, the same "court" has jurisdiction over the actions. Accordingly, in establishing the CPO's allocation of defendant's parental rights, responsibilities, and visitation concerning the child, the trial court did not improperly intrude on another court's jurisdiction with regard to these matters. R.C. 3113.31(A)(2). See, also, R.C. 3113.31(G) ("The remedies and procedures provided in this section are in addition to, and not in lieu of, any other available civil or criminal remedies"), and *Felton*, 79 Ohio St.3d 34, 679 N.E.2d 672, at paragraph one of the syllabus (holding that a court is not precluded by statute or public policy from issuing a CPO pursuant to R.C. 3113.31 even though a divorce decree already addresses similar matters). Defendant's second assignment of error is overruled.

{¶ 19} In his third assignment of error, defendant asserts that he did not receive a fair hearing because the trial court was biased against him. Defendant contends that the court's bias is exhibited by its preoccupation with and disdain for Syrian customs and practices and by the "onerous" conditions the court imposed that strictly limit defendant's visitation with his son. Defendant maintains that the trial court fixated on whether defendant intended to abscond to Syria with Abu, totally discounting defendant's testimony denying that he had such an intent.

{¶ 20} A judge is presumed not to be biased or prejudiced, and a party alleging bias or prejudice must present evidence to overcome the presumption. *In re Disqualification of Kilpatrick* (1989), 47 Ohio St.3d 605, 606, 546 N.E.2d 929; *Eller v. Wendy's Internatl., Inc.* (2000), 142 Ohio App.3d 321, 340, 755 N.E.2d 906. "The existence of prejudice or bias against a party is a matter that is particularly within the knowledge and reflection of each individual judge and is difficult to question unless the judge specifically verbalizes personal bias or prejudice toward a party." Id.

{¶ 21} Pursuant to R.C. 2701.03, the Ohio Supreme Court, not the courts of appeals, has authority to determine a claim that a common pleas court judge is biased or prejudiced. *State v. Scruggs*, Franklin App. No. 02AP–621, 2003-Ohio-2019, 2003 WL 1908222, at ¶ 15, citing *Beer v. Griffith* (1978), 54 Ohio St.2d 440, 441, 8 O.O.3d 438, 377 N.E.2d 775. If defendant believed that the trial judge was biased or prejudiced against him, his remedy was to file an affidavit of disqualification for prejudice with the clerk of the Ohio Supreme Court. R.C. 2701.03; *Scruggs*, at ¶ 15. R.C. 2701.03 "provides the exclusive means by which a litigant may claim that a common pleas judge is biased and prejudiced." Id., quoting *Jones v. Billingham* (1995), 105 Ohio App.3d 8, 11, 663 N.E.2d 657. R.C.

2701.03(B) requires that a party asserting bias or prejudice by a common pleas court judge file an affidavit of disqualification that sets forth the specific allegations and supporting facts on which the claim of bias or prejudice is based "with the clerk of the supreme court not less than seven calendar days before the day on which the next hearing in the proceeding is scheduled."

{¶ 22} The hearing at issue was held on two days, August 26 and October 31, 2003. Several of defendant's claims of bias and prejudice relate to the first day of the hearing. Although defendant had ample opportunity to file an affidavit of disqualification for prejudice before the full hearing on the CPO was completed, the record does not reflect that defendant filed an affidavit with the Ohio Supreme Court as provided in R.C. 2701.03. Accordingly, defendant did not invoke the jurisdiction of the proper court to review this issue.

■■ {¶ 23} Even if this issue were properly before this court for review, defendant did not raise objections in the trial court on the basis of bias or prejudice to the court's comments, remarks, or evidentiary rulings that defendant now contends exhibit bias. Therefore, to the extent that this issue is subject to our review, it is reviewed under a plain-error analysis. See *Weiner v. Kwiat*, Montgomery App. No. 19289, 2003-Ohio-3409, 2003 WL 21487995, at ¶ 96. Such an analysis is applicable in cases involving "exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." Id., citing *Metro. Life Ins. Co. v. Tomchik* (1999), 134 Ohio App.3d 765, 794, 732 N.E.2d 430.

{¶ 24} Defendant has failed to establish that the trial court in this case exhibited bias or prejudice toward defendant. The fact that both parties in this case are Syrian nationals seriously undermines defendant's contention that the trial court was biased against him because of his Syrian nationality.

{¶ 25} Moreover, evidence concerning the parties' Syrian nationality and defendant's continued ties to Syria was relevant because plaintiff alleged that defendant repeatedly threatened to abscond with the child to Syria and live there permanently with the child, with or without plaintiff. Evidence, including defendant's testimony, indicated that if defendant took the child to Syria, plaintiff would be unable to take the child out of Syria without the permission of defendant or his family, and plaintiff would essentially lose her parental rights concerning the child when he turns nine years old. The evidence further indicated that if defendant absconded with the child to Syria, Syria would not likely recognize and enforce the validity of a judicial decree a United States court issued concerning the parties' marriage, divorce, or parental rights.

{¶ 26} Based on the facts and circumstances of this case, it was entirely appropriate for the trial court to admit and consider evidence concerning Syrian law and custom in order to issue a CPO designed to ensure the safety and protection of plaintiff and the child. Defendant's third assignment of error is overruled.

{¶ 27} Defendant's fourth, fifth, and sixth assignments of error are interrelated and thus will be addressed jointly. Together they assert that the trial court's granting of a CPO against defendant is against the great weight of the evidence and that the relief provided to plaintiff exceeds the court's statutory authority.

{¶ 28} Whether to grant a civil protection order is within the sound discretion of the trial court. *Trent v. Trent* (May 10, 1999), Preble App. No. CA98–09–014, 1999 WL 298073. "When granting a protection order, the trial court must find that petitioner has shown by a preponderance of the evidence that petitioner or petitioner's family or household members are in danger of domestic violence." *Maccabee v. Maccabee* (June 29, 1999), Franklin App. No. 98AP–1213, 1999 WL 430943, citing *Felton,* supra, 79 Ohio St.3d 34, 679 N.E.2d 672, at paragraph two of the syllabus. For purposes of R.C. 3113.31, domestic violence means the occurrence of one or more of the following acts against a family member:

(a) Attempting to cause or recklessly causing bodily injury;

(b) Placing another person by the threat of force in fear of imminent serious physical harm or committing a violation of section 2903.211 or 2911.211 of the Revised Code;

(c) Committing any act with respect to a child that would result in the child being an abused child, as defined in section 2151.031 of the Revised Code. R.C. 3113.31(A)(1).

{¶ 29} Pursuant to R.C. 2151.031, "abused child" includes any child who is endangered as defined in R.C. 2919.22 or who suffers physical or mental injury that harms or threatens to harm the child's health or welfare as the result of an action of the child's parent. R.C. 2919.22, in turn, provides that a parent of a minor child shall not create a substantial risk to the health or safety of the child by violating a duty of care, protection, or support.

{¶ 30} In this case, in granting the CPO for the protection of plaintiff and the child, the trial court found that as a result of defendant's past threats and physical altercations, plaintiff is in fear of imminent serious physical harm and has a legitimate fear that defendant might take the child to Syria to gain permanent and sole custody and control over the child to the exclusion of plaintiff. Although not expressly stated, the trial court thus implicitly found that

plaintiff and the child were in danger of domestic violence under R.C. 3113.31(A)(1).

{¶ 31} Defendant contends that the evidence does not support the trial court's issuing a CPO because defendant specifically denied plaintiff's claims that defendant threatened to beat her, to physically harm the child, or to abscond with the child to Syria and deprive plaintiff of her parental rights. Defendant asserts that the trial court thus abused its discretion in granting the CPO based solely upon plaintiff's uncorroborated, biased testimony.

{¶ 32} Contrary to defendant's assertion, plaintiff's testimony alone is sufficient to meet the preponderance-of-the-evidence standard. *Felton*, 79 Ohio St.3d at 44, 679 N.E.2d 672; *Stanley v. Stanley* (Sept. 17, 2001), Mahoning App. No. 99 CA 203, 2001 WL 1128835. Plaintiff was not required to corroborate her testimony with other witnesses. *Maccabee*, supra.

{¶ 33} Plaintiff testified to several instances that occurred during the marriage and after she filed for divorce in which defendant allegedly threatened to beat and physically assault her. She also recounted one incident in which defendant allegedly placed a hot cup filled with boiling tea against her skin and then threatened to do the same to Abu, but plaintiff stopped him. Plaintiff stated that after she filed for divorce, defendant repeatedly threatened to take Abu to Syria to live, where the child could not leave the country without defendant's permission. Plaintiff testified that defendant's threats increased as the divorce proceedings progressed, and she filed for a CPO after defendant moved close to her residence. Plaintiff deemed defendant's move as threatening because the court in the divorce action already had limited defendant's parenting time to supervised visitation, which was conducted at a different location.

{¶ 34} Contrary to plaintiff's testimony, defendant specifically denied each of plaintiff's claims of threatened physical violence and denied that he had any intent to take Abu to Syria. Defendant explained that his purpose in moving his residence within close proximity to plaintiff was predicated on economics and the availability of low rent, rather than a desire to harm plaintiff.

{¶ 35} Essentially, plaintiff's allegations concerning defendant resolved into a credibility determination between plaintiff and defendant. The trial court, presented with two conflicting versions of the events that formed the basis for the allegations, expressly found plaintiff to be credible. As the trier of fact, the trial court had the benefit of observing the witnesses and weighing their testimony, and thus it was in the best position to weigh the credibility of their testimony and determine the facts of the case. *Stanley*; *Maccabee*, supra.

{¶ 36} "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as

being against the manifest weight of the evidence." *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, syllabus; *Maccabee*, supra. We afford every reasonable presumption in favor of the trial court's judgment and findings of fact, and evidence susceptible of more than one interpretation is construed consistently with the trial court's judgment. *Stanley*, supra, citing *Gerijo, Inc. v. Fairfield* (1994), 70 Ohio St.3d 223, 226, 638 N.E.2d 533.

{¶ 37} Under those parameters, plaintiff's testimony provided competent, credible evidence to support a finding that defendant posed a danger of domestic violence under R.C. 3113.31(A)(1). The trial court's finding that plaintiff is in fear of imminent serious physical harm and legitimately fears that defendant will abscond with the child to Syria and thereby deprive her of her parental rights concerning the child is not against the manifest weight of the evidence. Because sufficient evidence supports its finding, the trial court did not abuse its discretion in granting the CPO.

{¶ 38} Defendant nonetheless argues that the trial court should not have considered the alleged incidents of physical violence because they occurred approximately two years before the petition for CPO was filed and thus did not indicate any perceived or reasonable fear of a threat of domestic violence existing at the time the court granted the CPO.

{¶ 39} "Threats of violence constitute domestic violence for the purpose of R.C. 3113.31 if the fear resulting from those threats is reasonable." *Lavery v. Lavery* (Dec. 5, 2001), Summit App. No. 20616, 2001 WL 1545663. "The reasonableness of the fear should be determined with reference to the history between the petitioner and the defendant." *Gatt v. Gatt* (Apr. 17, 2002), Medina App. No. 3217–M, 2002 WL 570389, citing *Eichenberger v. Eichenberger* (1992), 82 Ohio App.3d 809, 816, 613 N.E.2d 678. R.C. 3113.31 does not require evidence of new domestic violence before a CPO may be issued or continued. *Maccabee; Trent*, supra. "[T]he statute does not place any outer limit on when the domestic violence must have occurred. Whether an occurrence of domestic violence is recent enough to warrant a civil protection order is a matter committed to the sound discretion of the trial court." *Halley v. Ashley* (Nov. 12, 1997), Summit App. No. 18232, 1997 WL 760662.

{¶ 40} Here, plaintiff testified that she was prompted to file the petition for a CPO not solely because of defendant's past threats of physical violence, but largely because of defendant's continued and increasing threats to abscond with Abu to Syria after plaintiff filed her complaint for divorce, and because defendant moved close to plaintiff's residence even though the court in the divorce action prohibited him from seeing Abu except during supervised visitation, a right he exercised only twice. Given these circumstances, the trial court did not abuse its

discretion in finding that a CPO was warranted to protect plaintiff and the child from a threat of domestic violence.

{¶ 41} Defendant next argues that the trial court's restrictions on defendant's parental rights were unreasonable and burdensome because they ordered defendant not to remove the child from the United States and limited defendant's parenting time to supervised visitation only. Defendant contends that the scope of relief exceeded the court's authority under R.C. 3113.31 and that the evidence did not substantiate the relief the court ordered.

{¶ 42} R.C. 3113.31 gives the trial court extensive authority to tailor the CPO to the circumstances before the court. *Felton*, 79 Ohio St.3d at 38, 679 N.E.2d 672. In light of defendant's threats to harm plaintiff and abscond with the parties' child to a foreign country, the restrictions placed upon defendant, together with the court's continuation of the CPO for the maximum five-year period allowed by statute, were appropriate and were within the authority granted to the trial court under R.C. 3113.31.

{¶ 43} Based upon the foregoing, defendant's fourth, fifth, and sixth assignments of error are overruled.

{¶ 44} Having sustained defendant's first assignment of error, but having overruled defendant's remaining assignments of error, we reverse the trial court's November 5, 2003 entry, and we affirm the trial court's October 31, 2003 entry and CPO.

Judgment affirmed in part
and reversed in part.

LAZARUS, P.J., and BOWMAN, J., concur.